**Manjit KAUR, Petitioner,**

**v.**

**John ASHCROFT, Attorney General, Respondent.**

Nos. 02–74196, 03–73783.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 8, 2004.*

Filed Nov. 12, 2004.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Jagdip Singh Sekhon and Jagprit Singh Sekhon, Sekhon & Sekhon, San Francisco, CA, for the petitioner.

Douglas E. Ginsburg, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

Before: HALL, BRUNETTI, and GRABER, Circuit Judges.

GRABER, Circuit Judge:

Petitioner Manjit Kaur petitions for review of the Board of Immigration Appeals' (BIA) denial of her application for asylum and withholding of deportation. Kaur argues that the BIA's decision is not supported by substantial evidence and that the immigration judge (IJ) denied her a full and fair hearing because he did not allow a percipient witness, Petitioner's son, to testify in support of her asylum claim. We agree that the IJ denied Kaur a full and fair hearing. Accordingly, we grant the petition for review and remand to the BIA with instructions to order a new hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Manjit Kaur is a Sikh and is a native and citizen of India. She entered the United States on April 6, 1994, and applied for asylum and withholding of deportation several months later. In her application, Petitioner presented a detailed account of her alleged persecution. The application stated that Petitioner participated regularly in political activities, was a senior member of the Sikh Student Federation, and was beaten by police in front of her children.

In 1998, Petitioner had an interview with an immigration official regarding her asylum application. During the interview, Petitioner affirmed the truth of her application. She also supplemented the application with supposed documentation that she had been gang-raped.

Sometime after Petitioner came to the United States, her son Jagdip Singh followed. In 2000, about a year before Petitioner's hearing, Jagdip was granted asylum. His application detailed the persecution that he and his family had suffered in India. Jagdip also pointed out significant discrepancies between his and his mother's applications and stated that his mother would submit an amended declaration to reflect accurately her claim for asylum.

In 2001, shortly before her hearing, Petitioner filed an amended declaration in which she disavowed her original asylum application. She was not, in fact, politically active or a high-ranking Sikh party official, and she had never been beaten in front of her children or gang-raped. The amended declaration described entirely different events constituting alleged persecution, and Petitioner testified in her hearing to the events recounted in the amended declaration.

Petitioner brought her son Jagdip to her hearing so that he could testify, as an eyewitness, to her amended claim of persecution. Before Petitioner gave her testimony, the IJ acknowledged that "the son is here to testify" and asked Jagdip to

leave the courtroom until he was called in as a witness.

Petitioner testified to the following facts. Her husband belonged to Akali Dal (Mann), a political party advocating the secession of the Punjab province from India, although Petitioner had never been politically active herself. In 1990, her husband began to shelter militants from the Khalistan Liberation Force, who also desired to establish a Panjabi state, Khalistan. For this activity, he was arrested three times and severely beaten; he eventually fled India for Nepal. After her husband left, police came to Petitioner's home weekly and questioned her about his whereabouts. The police arrested Petitioner twice. The first time, soon after her husband fled, she was detained for one day. During her first detention the police slapped her, verbally abused her by calling her names such as "bitch," "dog," and "Khalistani," and interrogated her about her husband. Petitioner was arrested a second time in March of 1994 and, this time, was detained for two days. She was interrogated, slapped, called names, beaten with sticks, and threatened with death and rape. After her release, Petitioner went into hiding and left India for Canada, later entering the United States.

Petitioner also admitted that she had submitted a false asylum application originally and that she had lied to the asylum officer during the 1998 interview. She explained that she had submitted the false application because she was alone, could not afford a lawyer, and could not understand English, and she testified (through a translator):

> I felt very bad that I spoke the lie. I did this [amended] application to show that I was, I am truthful. I knew that it won't be in my favor, but still I wanted to tell the truth. Now my son is with me. What will he think about my lying?

And according to the Sikh faith, it tells you that you should only speak the truth.

At the end of Petitioner's testimony, the IJ denied Petitioner's request for asylum and withholding of deportation. He made an adverse credibility finding premised mainly on Petitioner's admitted earlier falsehoods, on the resulting inconsistencies in her claims, on Petitioner's delay in recanting, and on a lack of corroboration. With regard to Jagdip, the IJ said that,

> [w]hile her son was available to testify, the Court notes that when the events occurred to [Petitioner's] son, he was age 14, and when the events occurred to [Petitioner] in India, it was in 1994, when[Petitioner's] son was substantially younger. The Court finds that [Petitioner's] son's testimony regarding any evidence which would have happened to [Petitioner] to be weak at best.

The BIA dismissed Petitioner's appeal, relying largely on the reasoning of the IJ and adding that Petitioner's testimony was "confusing, implausible, and inconsistent."

Petitioner timely sought review in this court.

## STANDARD OF REVIEW

When the BIA adopts an IJ's decision, but also adds its own reasoning, as occurred here, we review both decisions. *Kataria v. INS*, 232 F.3d 1107, 1112 (9th Cir.2000). We review de novo a due process claim. *Hartooni v. INS*, 21 F.3d 336, 339 (9th Cir.1994).

## DISCUSSION

An alien like Manjit Kaur "who faces deportation is entitled to a full and fair hearing of [her] claims and a reasonable opportunity to present evidence on [her] behalf." *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir.2000). *See also Reyes–Melendez v. INS*, 342 F.3d 1001, 1006 (9th

Cir.2003) (holding that a remand is called for when an alien was prevented from reasonably presenting his or her case); 8 U.S.C. § 1229a(b)(4)(B) (providing that an alien has a right to present evidence). As the Supreme Court has explained, the Fifth Amendment's "Due Process Clause applies to all 'persons' within the United States, including aliens." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Indeed, it is an IJ's duty to develop the record fully and fairly. *Jacinto v. INS*, 208 F.3d 725, 733 (9th Cir.2000).

 Petitioner presented her son Jagdip at her asylum hearing as a corroborating witness to testify on her behalf. Rather than allowing Jagdip to testify, however, the IJ made a decision without taking his testimony. Without having placed Jagdip under oath or having questioned him, the IJ reasoned that Jagdip's testimony would not help Petitioner because Jagdip had been only about 8 or 9 years old when the relevant events took place. At the same time, he faulted Petitioner for failing to offer corroborating evidence.

The IJ's failure to allow Jagdip to testify denied Petitioner a reasonable opportunity to present evidence on her behalf and, for that reason, also precluded Petitioner from receiving a full and fair hearing. *See Colmenar*, 210 F.3d at 971 (stating principle). Although Jagdip's relatively young age at the time of the crucial events might have affected the weight of his testimony, it should not have prevented him from testifying altogether, at least in the absence of an inquiry by the IJ into Jagdip's ability to perceive, recall, and recount the events in question. *See, e.g., Walters v. McCormick*, 122 F.3d 1172, 1175 (9th Cir. 1997) (holding that a four-year-old could testify in a sexual assault case and that any inconsistencies went to the weight, not

the admissibility, of the testimony). The IJ was not entitled to prejudge Jagdip's credibility or the probative value of his testimony. Jagdip's testimony was relevant, not only to corroborate Petitioner's claim of past persecution and perhaps to influence the IJ's assessment of her credibility, but also to establish a well-founded fear of future persecution, which the IJ found lacking due, again, to the absence of corroborating evidence.

In a pair of cases, the Seventh Circuit recently came to the same conclusion as we do here. In *Kerciku v. INS*, 314 F.3d 913, 917 (7th Cir.2003) (per curiam), the court held that an IJ's refusal to allow an asylum applicant to complete his own testimony, or to present corroborating witnesses, violated the applicant's due process rights. While recognizing that an IJ may limit repetitive or unnecessary testimony, the court concluded that a judge violates due process by "barring complete chunks of oral testimony that would support the applicant's claims." *Id.* at 918. Here, there was no substitute for the oral testimony from Jagdip that the IJ barred.

Similarly, in *Podio v. INS*, 153 F.3d 506, 510–11 (7th Cir.1998), the court found a due process violation where an IJ refused to allow an asylum applicant's brother and sister to testify on the applicant's behalf. As in this case, the brother and sister had fled the applicant's native country *after* the applicant left, and as in this case they had been granted asylum. The Seventh Circuit reasoned that the family members' testimony was relevant to an assessment of the applicant's claims of past and future persecution; the court could "see no reasonable basis for refusing altogether to hear from [the applicant's] brother and sister." *Id.* at 510.

Our own cases are consistent with the Seventh Circuit's approach. In *Colmenar*, the IJ refused to hear certain testimony

from the petitioner but, instead, relied almost exclusively on his written asylum application. 210 F.3d at 972. Granting the petition and remanding on account of a due process violation, we observed that it is "[b]etter that we hear these claims out fully and fairly and then make an informed judgment on the merits. This is consistent with our role as judges, and the values of our Constitution demand no less." *Id.* at 973. *See also Shoafera v. INS,* 228 F.3d 1070, 1075 (9th Cir.2000) (holding that, where an IJ found a credible applicant's claim insufficient because of her "speculations and conclusions," the IJ had to elicit all available testimony from the applicant before rejecting her claims).

The due process violation in this case may well have affected the outcome of the proceeding. *See Agyeman v. INS,* 296 F.3d 871, 877 (9th Cir.2002) (describing standard of prejudice for due process claim). That being so, we must grant the petition and remand for a new hearing.

PETITION GRANTED; REMANDED with instructions to grant a new hearing.