*Malets v. Garland*

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2022

ARGUED: FEBRUARY 13, 2023
DECIDED: APRIL 14, 2023

No. 19-4216

YEVHENII IVANOVICH MALETS,
*Petitioner*,

*v.*

MERRICK B. GARLAND, UNITED STATES
ATTORNEY GENERAL,
*Respondent*.

Appeal from the Board of Immigration Appeals,
*In re Y-I-M-*, 27 I. & N. Dec. 724 (B.I.A. 2019).

Before:      SACK, NATHAN, *Circuit Judges*, and BROWN, *District Judge*.[*]

---

[*] Judge Gary R. Brown, of the United States District Court for the Eastern District of New York, sitting by designation.

Petitioner, a native and citizen of Ukraine, seeks review of a December 12, 2019 decision of the Board of Immigration Appeals ("BIA") affirming the denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Based on ostensible inconsistencies in Petitioner's testimony and a purported failure to submit corroborating evidence, an Immigration Judge ("IJ") entered an adverse credibility finding. However, we conclude that the adverse credibility finding is not supported by substantial evidence and that the IJ unjustifiably refused to allow Petitioner to present readily available witness testimony, thereby depriving him of a full and fair hearing. As such, we GRANT the petition for review, VACATE the BIA's decision, and REMAND the case for further proceedings consistent with this opinion.

PETITION GRANTED; VACATED AND REMANDED.

> JOHN GIAMMATTEO, Immigration Legal Program, Lutheran Social Services of New York, New York, NY, *for Petitioner*.

> ANDREW N. O'MALLEY, Senior Litigation Counsel (Jeffrey Bossert Clark, Acting Assistant Attorney General; Cindy S. Ferrier, Assistant Director, *on the brief*), United States Department of Justice, Office of Immigration Litigation, Washington, DC, *for Respondent*.

GARY R. BROWN, *District Judge*:

Petitioner Yevhenii Ivanovich Malets, a native and citizen of Ukraine, seeks review of a December 12, 2019 decision of the BIA affirming a February 11, 2019 decision of an IJ denying Malets's application for asylum, withholding of removal, and relief under CAT. *In re Y-I-M-*, 27 I. & N. Dec. 724 (B.I.A. 2019), *aff'g* No. A208 515 079 (Immig. Ct. N.Y.C. Feb. 11, 2019). Having identified several ostensible inconsistencies in Malets's testimony and determined that Malets failed to submit corroborating evidence sufficient to rehabilitate his credibility, the IJ entered an adverse credibility finding. The IJ denied Malets's application and the BIA affirmed. Malets timely sought review before this Court.

Following review of the arguments and the record on appeal, we remand the case to the BIA for further proceedings for two reasons. First, the adverse credibility finding relies, in large measure, on legal error by the agency, including misstatement and mischaracterization of the facts in the record and flawed reasoning. We cannot confidently predict that in the absence of such error, the agency would have reached the same conclusion. Second, given that the IJ based his adverse credibility finding in part upon a failure of Malets to provide corroborating evidence, the IJ's unjustified refusal to allow Malets to present

readily available witness testimony deprived him of a full and fair hearing.

We therefore GRANT Malets's petition for review, VACATE the BIA's decision, and REMAND the case for further proceedings consistent with this opinion.[1]

## FACTUAL BACKGROUND

In 2014, Malets was admitted to the United States under the Visa Waiver Program using a false Hungarian passport. The following year, he timely applied for asylum, withholding of removal, and CAT relief. Malets alleged that when he was drafted for military service in 2007 and 2008, Ukraine granted him an alternative service option because as a member of the Russian Orthodox Church, his faith proscribed taking human life.

Ukraine instituted a draft in 2014 to respond to a growing conflict in Eastern Ukraine, which included fighting between pro-Russian separatists and Ukrainian nationalists. Malets testified that on August 6, 2014, he was summoned to a military office to respond to a draft notice and requested alternative military

---

[1] On appeal, the Government argues that the BIA's decision is entitled to *Chevron* deference because in that decision, the BIA interpreted the statutes governing an IJ's obligation to confront an applicant with perceived inconsistencies before the IJ renders an adverse credibility determination. Resp. Brief at 27*ff*. However, because we conclude that the purported inconsistencies in this case are not supported by substantial evidence, we need not reach this issue.

service. As a result of his request, he was beaten by military personnel. On August 9, 2014, Malets was stopped at a police checkpoint at which he was beaten into unconsciousness by Ukrainian police and members of the "Right Sector" (a nationalist organization) as a suspected pro-Russian separatist. The August 9 attack resulted in wounds requiring medical treatment.

In September 2014, Malets filed a complaint with a local prosecutor concerning the attacks. That evening, a group of men affiliated with the "Right Sector" beat him in retaliation for filing the complaint, dragging him to a nearby river where they began to suffocate him and threatened him with death if he made further reports to the police. Malets then briefly crossed into Hungary to procure a false Hungarian passport as a means to flee Ukraine. Malets fled Ukraine to the United States shortly thereafter, in October 2014. After Malets's departure from Ukraine, members of the "Right Sector" continued to threaten his mother.

## PROCEDURAL BACKGROUND

In a written decision dated February 11, 2019, the IJ denied Malets's application for asylum, withholding of removal, and protection under CAT. The IJ predicated its decision, in relevant part, on an adverse credibility finding. Though the IJ provided a lengthy summary of testimony, the decision separately

delineated factual findings.

In support of the adverse credibility finding, the IJ identified five specific areas of concern, including testimony and statements regarding (1) Malets's travel to Hungary to obtain a fraudulent passport; (2) the date on which he was first attacked; (3) the duration of medical treatments following those attacks; (4) his rank upon discharge from military service; and (5) his dates of employment as a truck driver. The IJ further found that Malets "failed to submit sufficient corroborating evidence to overcome his otherwise incredible testimony." Certified Administrative Record ("CAR") 125.

In affirming the IJ's decision, the BIA found "no clear error in the Immigration Judge's adverse credibility finding," which was supported, according to the BIA, by "specific and cogent reasons." CAR 15. The BIA found that the IJ had "properly relied on [certain] implausible aspects of the applicant's claim as support for the adverse credibility finding," including the alleged inconsistencies concerning Malets's trip to Hungary, military rank, and medical treatment. CAR 16-17.

DISCUSSION

*Standard of Review*

In the asylum context, an IJ's "administrative findings of fact are conclusive

6

unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). As a result, "the IJ's factual findings— including her adverse credibility determinations—merit deference so long as they are supported by substantial evidence." *Gurung v. Barr*, 929 F.3d 56, 60 (2d Cir. 2019). An adverse credibility finding, though, does not immunize an IJ's determination. *Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 335 (2d Cir. 2006) ("[T]he fact that an IJ 'has relied primarily on credibility grounds in dismissing an asylum application cannot insulate the decision from review.'" (quoting *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004))). The deferential standard "does not erase our obligation to assess whether the agency has provided specific, cogent reasons for the adverse credibility finding and whether those reasons bear a legitimate nexus to the finding." *Hong Fei Gao v. Sessions*, 891 F.3d 67, 77 (2d Cir. 2018) (citation and internal quotation marks omitted). "[I]n order to merit substantial evidence deference, '[t]he [IJ] must give specific, cogent reasons for rejecting the petitioner's testimony,' and an adverse credibility determination may not be based upon speculation or upon an incorrect analysis of the testimony." *Cao He Lin v. U.S. Dep't of Just.*, 428 F.3d 391, 400 (2d Cir. 2005) (quoting *Ramsameachire*, 357 F.3d at 178); *see also Su Chun Hu v. Holder*, 579 F.3d

155, 158 (2d Cir. 2009) ("[T]he 'substantial evidence' standard requires that the factual findings be supported by 'reasonable, substantial and probative evidence in the record.'" (quoting *Lin Zhong v. U.S. Dep't of Just.*, 480 F.3d 104, 116 (2d Cir. 2006))); *Gurung*, 929 F.3d at 61 (holding that the IJ's credibility determination must be "tethered to the evidentiary record" (quoting *Siewe v. Gonzales*, 480 F.3d 160, 169 (2d Cir. 2007))).

Where an IJ "has denied asylum and related relief on credibility grounds, we can (and we will) affirm only if (a) the agency offered a clearly independent and sufficient ground for its ruling,[2] one that is not affected by any erroneous adverse credibility findings, or (b) the evidentiary record includes statements that are so inconsistent that we can be confident that the agency would not accept any kind of explanation." *Gurung*, 929 F.3d at 62. "The mere possibility that our Court may believe the remaining evidence would be sufficient to support the agency's conclusion cannot justify affirmance." *Id.* at 58.

Finally, where, as here, "the BIA agrees with an IJ's adverse credibility determination and adopts particular parts of the IJ's reasoning, we review the

[2] The IJ also held, in the alternative, that a fundamental change in circumstances rebutted his well-founded fear of future persecution. We consider only the adverse credibility determination here because the BIA did not affirm the IJ's alternative finding. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005).

8

decisions of both the BIA and the IJ." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 166 (2d Cir. 2008). "Our review of the IJ's decision includ[es] the portions not explicitly discussed by the BIA, but not those grounds explicitly rejected by the BIA." *Hong Fei Gao*, 891 F.3d at 76 (citations and internal quotation marks omitted); *see also Xue Hong Yang*, 426 F.3d at 522.

**I.**

The first two purported inconsistencies identified by the IJ—statements about Malets's trip to Hungary and the sequence of the August attacks—do not provide substantial evidence for the adverse credibility determination. Rather, those findings constitute misstatements of the evidentiary record. The IJ held that Malets "failed to mention that he ever traveled to Hungary in his written statement, and original asylum application." CAR 124.[3] The IJ further found that Malets "was unable to explain why his statement was devoid of his trip to Hungary." CAR 124. On review, the BIA held that "the applicant's credibility was

---

[3] Even assuming, *arguendo*, that this finding was accurate, it would concern an omission rather than an inconsistency. While either may be considered in connection with a credibility assessment by the IJ, "in general 'omissions are less probative of credibility than inconsistencies created by direct contradictions in evidence and testimony.'" *Hong Fei Gao*, 891 F.3d at 78 (quoting *Yongguo Lai v. Holder*, 773 F.3d 966, 971 (9th Cir. 2014)). Moreover, here, the IJ characterized the omission as an inconsistency, which is an error. *See id.* at 79 (holding that "the IJs erred to the extent that they characterized these omissions as inconsistencies").

further undermined by the fact that his written statement failed to mention his travel to Hungary." CAR 17. Curiously, the BIA added that Malets "did not testify on direct examination that he went to Hungary to obtain a false passport, which he only acknowledged on cross-examination by the DHS," a finding supplemental to those made by the IJ. CAR 17.

These findings by the IJ and the BIA, however, are erroneous. Malets's original asylum application states—literally in capital letters—that he "STAYED FOR 1 DAY IN HUNGARY WHERE I RECEIVED HUNGARIAN PASSPORT." CAR 340. Malets's amended 2018 application similarly states that he "traveled to Hungary, where I stayed for one (1) day and received a Hungarian passport which I used to travel to the United States so that I could apply for asylum." CAR 1060.[4] His written affidavit was an attachment to that 2018 application. CAR 168 (DHS counsel describing "statement that is attached to your asylum application"). Moreover, even though travel to Hungary is not specifically mentioned, the affidavit describes obtaining a false Hungarian passport. Finally, despite the BIA's supplemental determination that Malets's direct testimony did not mention the Hungary trip, on direct, Malets testified in detail about traveling to Hungary to

---

[4] This entry contains handwritten changes to, for example, the date of the travel, which were extensively discussed at the hearing.

obtain a false passport, which he used to enter the United States.

As to the August attacks, the IJ found:

> based on the Respondent's testimony and his written statement, it is unclear when his first attack occurred. He initially testified that he was first attacked on August 6, 2014, but later stated that he was attacked on August 9, 2014.

CAR 124. The IJ relies upon this alleged inconsistency to buttress his adverse credibility finding. Yet there was no inconsistency. In his affidavit, Malets provided a detailed account of an attack that occurred on August 6, 2014 at a conscription office in Uzhhorod. The affidavit similarly describes a second, subsequent attack by armed men on August 9, 2014, as well as the injuries sustained by Malets during the ensuing beating. At the hearing, under questioning by the IJ, Malets plainly described the two attacks that occurred on August 6 and 9. Contrary to the IJ's finding, there was no inconsistency as to whether he was attacked on August 6 or 9—according to the testimony and documents, he was attacked on both dates.

The next purported inconsistency concerns Malets's medical treatment by a Ukrainian outpatient clinic following the August 9 attack. A sworn doctor's note, translated from Ukrainian, provides the following diagnosis: "Blow impact on the thorax on the right side. Post traumatic right-side Pneumonia." CAR 688.

11

Furthermore, the doctor's note reflects that Malets was "sick and received outpatient treatment from August 11, 2014 till October 3, 2014." CAR 688. Malets testified that he was "treated as an outpatient with [the clinic] for a period of two months." CAR 183. Malets explained that he received treatments at the clinic until September 17, 2014, but stopped attending the clinic thereafter because on that date, he was beaten in retaliation for filing a complaint with a prosecutor. Malets testified that the recommended course of treatment ran until October 3, but because he could no longer safely attend the clinic, his doctor visited his home twice thereafter to continue treating his wounds.

On this point, the IJ found Malets's testimony "internally inconsistent," noting:

> the Respondent initially testified that after the incident on August 9 or 10, 2014, he received treatment *at the outpatient clinic* for a period of two months. However, he later stated that he [was] treated *at the outpatient clinic* for five weeks from August 9, 2014, until September 17, 2014.

CAR 124 (emphases added). Yet Malets testified that he was "treated as an outpatient *with them* for a period of two months," but "did not *go to* the clinic" after being beaten on September 17. CAR 183, 185 (emphases added).[5] Nowhere in the

---

[5] Assuming the record evidence supported the inconsistency posited by the IJ, Malets's testimony

12

record does he testify to receiving treatment at the clinic for a two-month period.

In its review of this finding, the BIA explained that Malets

> attempts to explain this discrepancy on appeal by stating that the doctor occasionally came to his home to treat him during the time period covered by the medical document. However, this differs from the explanation the applicant proffered to the Immigration Judge. Because our appellate review is limited to the record below, we do not consider explanations for inconsistencies offered for the first time on appeal.

CAR 16. However, as reflected in the transcript and the IJ's summary, Malets raised the issue in his testimony before the IJ. Thus, the BIA's refusal to consider this issue constitutes error. *See Pavlova v. I.N.S.*, 441 F.3d 82, 89 (2d Cir. 2006) (remanding "where it is not apparent on the face of the record that the [agency] has considered the applicant's responses to the IJ's credibility concerns").

We have repeatedly remanded determinations predicated upon "purported inconsistencies on which the IJ relied [that] were not inconsistencies at all" because "we require that evaluation to be 'tethered to the evidentiary record.'" *Gurung*, 929 F.3d at 60-61 (quoting *Siewe*, 480 F.3d at 169). Furthermore,

---

that he was treated for a slightly *shorter* period than that contained in the medical documentation would seem to constitute "[a] trivial inconsistency . . . that has no tendency to suggest a petitioner fabricated his or her claim [that] will not support an adverse credibility determination." *Hong Fei Gao*, 891 F.3d at 77. Logically, fabrication in this context would tend to involve exaggerating the severity of wounds sustained (and the concomitant extent of treatment) from a politically motivated attack.

[c]redibility should not be questioned based on trivial differences in word choices alone. Once an inconsistency has been identified, "[a] petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." *Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) (internal quotation marks and citations omitted). It is essential that petitioners be asked to meet this stringent standard *only* where there is, indeed, something to explain away.

*Id.* at 61. Here, the first three issues cannot support the adverse credibility finding, as these purported inconsistencies rest upon "misstatement of the facts in the record." *Li Hua Lin v. U.S. Dep't of Just.*, 453 F.3d 99, 105–06 (2d Cir. 2006) (quoting *Zhou Yun Zhang v. INS*, 386 F.3d 66, 74 (2d Cir. 2004)).

The remaining two putative inconsistencies—those regarding Malets's rank upon leaving the military in 2008 and the dates of his employment as a truck driver—were oversimplified and mischaracterized by the agency. Entries in Malets's Ukrainian military identification book suggest that he entered service with the rank of "soldier" and was promoted to the rank of "senior soldier" on December 17, 2007. CAR 669. During the hearing, Malets stated that he had been "performing the duties of a senior soldier," and had been provided with "a paper [indicating] that [he] was promoted to the duties of senior soldier," but believed that he remained a private at the end of his service. CAR 179-81.

The IJ found that comparing this testimony to the document revealed a

14

material inconsistency,[6] while the BIA concluded that the IJ "observed that the applicant could not explain his prior military history, which was central to his claim." CAR 17. Yet Malets's prior military record is all but irrelevant to his asylum claim: his former service, a period of alternative military service without incident, has no bearing on whether he has faced persecution based upon a request years later for such an accommodation. Furthermore, Malets's subjective belief as to whether he officially held a position upon discharge from the military when he acknowledged performing the associated duties and receiving notification of a promotion constitutes "trivial differences in word choices" insufficient to sustain an adverse credibility ruling. *Gurung*, 929 F.3d at 61.

To be sure, an IJ may consider inconsistencies or omissions that do not go to the "heart of a claim" in assessing credibility, but "not all omissions and inconsistencies will deserve the same weight. A trivial inconsistency or omission that has no tendency to suggest a petitioner fabricated his or her claim will not support an adverse credibility determination." *Hong Fei Gao*, 891 F.3d at 77, 82. The mischaracterization of an irrelevant matter as "central" and "material" weighs

---

[6] To the extent the IJ intended to imply that an individual serving alternate military service in Ukraine could not or would not be promoted, there is nothing in the record to support such a conclusion. *See Li Hua Lin*, 453 F.3d at 105–06 (adverse credibility ruling may not be based upon "speculation or caprice" (quoting *Zhou Yun Zhang*, 386 F.3d at 74)).

15

in favor of rejecting such a finding, particularly where, as here, the inconsistency identified amounts to a trivial word-choice issue. Thus, the agency's conclusions appear to be based upon "flawed reasoning or misstatements of the record," which cannot support the adverse credibility finding. *Su Chun Hu*, 579 F.3d at 159.

Finally, the IJ identified discrepancies between Malets's testimony as to whether his prior employment included driving responsibilities and whether his most recent period of employment began in October 2013 or March 2014. These findings were not adopted by the BIA. Though labeled a "material inconsistenc[y]" by the IJ, CAR 124, nowhere in his decision did he explain how these issues relate to Malets's asylum claim, nor is the connection self-evident. And we have doubts whether, absent the errors identified above, the IJ would have reached the same conclusion based upon these remaining issues. *See Gurung*, 929 F.3d at 60-61.[7]

---

[7] Another troubling aspect of this finding arises from translation issues. Malets testified in Russian even though his principal language is Ukrainian, a language with which the interpreter was unfamiliar. *See, e.g.*, CAR 151 (interpreter noting that "I don't speak Ukrainian"); CAR 148 (interpreter having difficulties due to Malets's "strong Ukrainian accent"). Testimony relating to rank and promotions in the Ukrainian army presented particular problems for the translator. *See* CAR 148 (interpreter unable to translate answer to question, "Under your alternative military service in 2007, what was your job?"); CAR 179 (inability to translate Malets's military rank); CAR 181 (interpreter indicating uncertainty about translations of military ranks). These translation issues raise further doubts about the IJ's analysis of the testimony regarding Malets's military promotion. *Su Chun Hu*, 579 F.3d at 160 (remand further necessitated where "the record indicates

Taken together, these errors warrant remand. *Id.* at 58 (upon discovery of legal errors underlying an adverse credibility finding, "the correct course is to remand the case to the BIA, unless doing so would be futile").

**II.**

As part of his credibility determination, the IJ held that Malets "failed to submit sufficient corroborating evidence to overcome his otherwise incredible testimony." CAR 125. Of course, it is well established that "[a]n applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). In reaching this determination, the IJ highlighted Malets's failure to submit "any documents from his church in Ukraine." CAR 125. The BIA also rested its conclusions, in part, on Malets's failure to submit corroboration of his religious practices, noting that the IJ "determined that the applicant did not provide reasonable documentation of his claimed church attendance in Ukraine."

---

pervasive problems in translation"); *cf. Amadou v. I.N.S.*, 226 F.3d 724, 728 (6th Cir. 2000) ("[W]here the capability of the interpreter is in question, an alien is denied his due process right to a full and fair hearing.").

CAR 17.[8]

Yet at the hearing, Malets's counsel was prepared to offer testimony from available witnesses, including Malets's wife and two Russian Orthodox priests, on this very issue. As to the clergy members, the IJ inquired, "Is that just to say he's Russian Orthodox and attends the liturgy?" CAR 201. The IJ interrupted counsel's response, saying "I don't need to hear that . . . . So, there's no need to put that witness on the stand." CAR 201. Malets's attorney later pressed the point, stating:

> I also would request to call the priest if there are any issues with the religious convictions of the respondent. I would ask to call him to . . . testify related to his personal experiences with respondent's religious convictions.

CAR 203. The IJ again refused the offer, stating "I don't see a need to." CAR 203. Then, the IJ effectively curtailed counsel's presentation, stating:

> Look, here's a rule for trial practice. A lot of attorneys are not aware of it in my view. When a judge makes a ruling, if your arguments are cutoff, which happens regularly in trials and it's very disconcerting for the judge to basically shut you down, stop your arguments. Once the judge stops your arguments, your arguments are preserved for all purposes. In a way, it's as crazy as it sounds. There's an advantage to a judge shutting down your arguments, because then you not only have the one or two arguments you were going to raise, but you have any potential arguments that you didn't raise. So, you're protected

---

[8] At the hearing, DHS counsel pressed Malets to name his "favorite gospel." CAR 176. Malets declined to name a favorite, while correctly noting that there are four gospels and one was authored by John. In summarizing the testimony, the IJ observed that Malets "was, however, unable to identify his favorite gospel." CAR 118.

18

that way. . . .

So, don't get frustrated if I shutdown your arguments. It's just that I—we're now at 12:00, and we're nowhere . . . near done in the case.

CAR 203–04. Having thus truncated the hearing and ruled that no further evidence concerning Malets's religious convictions was required, the IJ nevertheless faulted Malets for failing to submit corroborating evidence of his religious beliefs.[9]

"It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in [removal] proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Of course, "[d]ue process requires that an applicant receive a full and fair hearing which provides a meaningful opportunity to be heard." *Li Hua Lin*, 453 F.3d at 104–05 (citation omitted). Furthermore, the statute governing removal proceedings provides that an alien "shall have a reasonable opportunity . . . to present evidence on the alien's own behalf." 8 U.S.C. § 1229a(b)(4)(B); *see Tsering v. Lynch*, 675 F. App'x 17, 19 (2d Cir. 2017) (applying 8 U.S.C. § 1229a(b)(4)(B) in asylum proceeding); *Marku v. Bd. of Immigr. Appeals*, 131 F. App'x 754, 755 (2d Cir.

---

[9] Similarly, the IJ foreclosed testimony by Malets's wife, who was present and prepared to testify, ruling "[t]here's no need to put the wife on the stand. I'll take her statement as credible." CAR 204. Yet the IJ's decision omits any reference to her affidavit, which provided corroborating details about Malets's religious practices in Ukraine as well as contemporaneous statements that tend to corroborate Malets's testimony concerning the attacks. The decision also ignores a sworn affidavit from Malets's mother, which provides corroborating evidence.

19

2005) (same).

As a result, we have repeatedly vacated adverse credibility determinations in asylum proceedings where "live testimony going to the crux of the asylum application is readily available, [but] an IJ . . . precludes the applicant from offering testimony." *Marku*, 131 F. App'x at 756; *see also id.* at 755 ("[T]he IJ did not provide Marku with a 'reasonable opportunity' to present evidence" and thus "fail[ed] to comply with the mandate of 8 U.S.C. § 1229a(b)(4)(B)"); *Tsering*, 675 F. App'x at 19 (ordering remand where IJ declined to hear from relevant witness); *cf. Roman v. Garland*, 49 F.4th 157, 167 (2d Cir. 2022) (remanding removal determination based upon failure to grant continuance "on an assumption that witness testimony would be unnecessary"). Other circuits have reached the same conclusion. *Kaur v. Ashcroft*, 388 F.3d 734, 737 (9th Cir. 2004) (asylum applicant was denied the right to a full and fair hearing where the IJ excluded relevant available witness testimony due to the witness's age); *Podio v. I.N.S.*, 153 F.3d 506, 510–11 (7th Cir. 1998) (IJ's refusal to allow asylum applicant's siblings to testify violated due process). Preclusion of testimony proves more problematic where, as here, the IJ excludes available testimony yet "[a]t the same time, he fault[s] Petitioner for failing to offer corroborating evidence." *Kaur*, 388 F.3d at 737;

*Tsering*, 675 F. App'x at 19 (finding error where IJ rejected claims "on credibility and lack of corroboration grounds after he declined to hear her witness and without considering reliable corroborating evidence in the record"); *Podio*, 153 F.3d at 511 (where IJ rejected testimony as "uncorroborated," applicant "was prejudiced because he was not given the chance to offer the very corroboration found lacking").

We have repeatedly recognized the extraordinary caseload burdens faced by IJs. *Ming Shi Xue v. Bd. of Immigr. Appeals*, 439 F.3d 111, 114 (2d Cir. 2006) *("*[T]he position of overburdened immigration judges and overworked courts has become a matter of wide concern."); *Gurung*, 929 F.3d at 62 ("In the immigration context, errors by overworked IJs are inevitably legion."). Accordingly, "IJs are accorded wide latitude in calendar management." *Roman*, 49 F.4th at 166 (internal citation omitted). Of course, "the agency does not commit an 'error of law' every time an item of evidence is not explicitly considered." *Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009). However, where an IJ bars readily available testimony, and then predicates an adverse credibility finding on the failure to provide corroborating evidence on an issue about which that testimony may be relevant, such a finding cannot stand.

**CONCLUSION**

For the foregoing reasons, we **GRANT** Malets's petition for review, **VACATE** the BIA's decision and **REMAND** the case to the agency for further proceedings consistent with this opinion. The pending motion for a stay of removal is **DENIED** as moot.