16-3883-ag
*Gurung v. Barr*

**IN THE**

# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM, 2018

SUBMITTED: MAY 31, 2019
DECIDED: JULY 8, 2019

No. 16-3883-ag

JHOK BAHADUR GURUNG,

*Petitioner,*

*v.*

WILLIAM P. BARR, United States Attorney General,

*Respondent.*

————

On Petition for Review from the
Board of Immigration Appeals

————

Before: CALABRESI and LOHIER, *Circuit Judges*, and DONNELLY, *District Judge.**

————

---

* Judge Ann M. Donnelly, of the United States District Court for the Eastern District of New York, sitting by designation.

Jhok Bahadur Gurung challenges the denial of his application for asylum and related relief. The Immigration Judge denied relief solely on a finding that Gurung was not credible. That finding stemmed from three purported inconsistencies in Gurung's testimony regarding: (1) the dates when Gurung received medical treatment after he was assaulted in 2012 by members of the Maoist Party; (2) the details of his encounter with the police following this attack; and (3) the severity of his father's injuries after an assault in 2000. The Board of Immigration Appeals affirmed the Immigration Judge's ruling. On review, we conclude that the second and third asserted inconsistencies do not amount to inconsistent statements at all. As to the first inconsistency, we are doubtful that it would—on its own—justify an adverse credibility finding. But, in any event, we do not believe that remanding the case to the agency would be futile. We therefore GRANT Gurung's petition for review, VACATE the order of removal, and REMAND the case.

---

JHOK BAHADUR GURUNG (pro se), *in support of Petitioner.*

SCOTT M. MARCONDA, JESSICA E. BURNS (U.S. Department of Justice, Civil Division, Office of Immigration Litigation), CHAD A. READLER (U.S. Department of Justice, Civil Division), *in support of Respondent.*

---

CALABRESI, *Circuit Judge*:

Petitioner Jhok Bahadur Gurung is a native and citizen of Nepal. Gurung seeks relief from political persecution in the form of asylum, withholding of removal, and protection under the Convention Against Torture. Relying exclusively on three purported inconsistencies in Gurung's testimony, the Immigration Judge (IJ) and the Board of Immigration Appeals (BIA) denied Gurung's petition on credibility grounds. Gurung sought review of that denial in

federal court. A member of our Court, sitting on the non-argument calendar panel, determined that this case should be heard on our regular argument calendar. Having now reviewed Gurung's petition as part of that calendar, we remand the case to the BIA and take the opportunity to address two issues that the petition raises.

*First*, what kinds of statements should be treated as "inconsistent" in making an adverse credibility finding? Simply because two statements are not identical does not mean that they are inconsistent. Given that an inconsistency finding places a heavy burden on the applicant, it is especially important for the IJ and the BIA to apply the correct standard. Hard as it is to explain away true inconsistencies, it is even harder to "justify" an inconsistency that does not exist.

*Second*, what is the proper remedy when the IJ and the BIA have committed legal error, but some evidence exists that might be sufficient—on its own—to support the agency's findings? In those situations, the correct course is to remand the case to the BIA, unless doing so would be futile. The mere possibility that our Court may believe the remaining evidence would be sufficient to support the agency's conclusion cannot justify affirmance.

In Gurung's case, the IJ and the BIA mistook two discrepancies in wording as inconsistencies. One possible inconsistency remains. Because we are not certain that the agency would have reached the same conclusion as to Gurung's credibility in the absence of the errors it made, we **GRANT** Gurung's petition for review, **VACATE** the order of removal, and **REMAND** the case to the Board of Immigration Appeals for further proceedings consistent with this opinion.

**FACTUAL BACKGROUND**

Gurung entered the United States in 2012 on a B-1 temporary visa. After his visa expired, Gurung applied for asylum, withholding of removal, and Convention Against Torture relief. Gurung's application asserted that, if he returned to Nepal, members of the Maoist Party would persecute him because of his support for the National Democratic Party (NDP). Gurung's application contained, in relevant part, testimony that he was the victim of two politically motivated assaults before he escaped to the United States. A summary of Gurung's allegations follows.

*1. 2000 Assault.* Soon after the Maoists murdered Gurung's uncle because of his NDP activism in the fall of 2000, they targeted Gurung and his father, who had both refused to pledge allegiance to the Maoist Party. In his written testimony, Gurung explained: "[M]y father and I were taken to a remote area where we were beaten all over our bodies and my father had serious injuries sustained from this attack; he was beaten almost to death. I was beaten severely and I lost consciousness." Cert. Admin. R. 154. During the hearing before the IJ, Gurung stated: "they beat [my father] very badly, but it is not like he was going to die, not like that. . . . He was old, so he got more injuries." *Id*. at 87-88. Shortly after this assault, Gurung left his village and escaped to Kathmandu. In the city, Gurung opened a guest house. As his business flourished, he made financial contributions to the NDP.

*2. 2012 Assault.* In April 2008, members of the Maoist Party came to Gurung's hotel and demanded a donation. Gurung told them that he had no cash, so they agreed to return the following month. After this incident, Gurung went

4

into hiding. According to Gurung's written declaration, late one night in February 2012, he was found and abducted by members of the Maoist Party. The abductors put Gurung in a van, blindfolded him, and drove for about 90 minutes to a jungle area, in the suburbs of Kathmandu. The Maoists locked Gurung in a dark room and severely beat him for three hours. In the morning, the Maoists told Gurung that if he didn't pay a large contribution to the Maoist Party, they would kill him. They released Gurung only after he promised to donate one million rupees to the Maoist Party.

Once Gurung made his way home, he went to the hospital and to the police. According to the hospital records—an "O.P.D. Ticket" booklet (a medical chart of sorts), *id.* at 187-92, and a later letter signed by the treating physician—Gurung complained of an assault and received x-rays, stiches, fluids, and various prescriptions. After he returned home, Gurung also attempted to report the attack to the police, to no avail.

Gurung subsequently sold his hotel and went further into hiding, "changing [his] apartment from one place to another, like one month one place, another month another place." *Id*. at 83. He learned that members of the Maoist Party continued to look for him at his former hotel. On July 3, 2012, Gurung left Nepal.

## PROCEDURAL BACKGROUND

Gurung arrived in the United States on July 4, 2012, on a B-1 visa, which expired on January 3, 2013. In September 2013, he applied for asylum and related relief. In November 2013, he was placed in removal proceedings for overstaying his visa. After a merits hearing, during which Gurung testified through the help

5

of an interpreter, the IJ denied all relief. In making her adverse credibility finding, the IJ relied mainly on what she deemed to be three inconsistencies.

*First*, the IJ noted how Gurung "wrote in his own written statement that his father was beaten 'almost to death' . . . [but] [i]n court, [Gurung] indicated that 'they beat him very badly but it's not like he was going to die.'" *Id.* at 31. In the eyes of the IJ, this was a "minor inconsistency." *Id*.

*Second*, Gurung's written declaration stated that, "even though the police took my *complaint*, they can't help and protect me and my family." *Id.* at 156 (emphasis added). Yet, during the hearing, Gurung testified that the "[p]olice refused to take a *report*" because "[t]his is [a] political matter," *id.* at 82 (emphasis added); the police, he explained, "looked at" his complaint and then "return[ed]" it to him, *id.* at 95. The IJ found these statements about the police to be inconsistent and unexplained.

*Third*, Gurung's written testimony indicated that he was abducted on February 10, 2012, and released the following day. At the hearing, Gurung first affirmed that he was "[h]alf conscious" when he was taken to the hospital "two or three hours after [he] returned," on February 11. *Id.* at 90. Later on, he stated that he "was afraid that the Maoists would attack [him]," so he hid in his home "for two days" and went to the hospital on February 13. *Id.* at 91-92. But, the IJ noted, Gurung's medical records are dated February 20. Gurung's attempt at explaining the inconsistency—"[m]aybe they put the date [on the O.P.D. Ticket], the day [he] paid off the bill there," he said, *id.* at 90-91—did not convince the IJ.

Relying on these three inconsistencies, the IJ ruled that Gurung was not credible and ordered him removed. After the BIA affirmed the IJ's ruling on the same credibility grounds, Gurung petitioned our Court for review.

**DISCUSSION**

Congress has specified that an IJ's "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Our Court has interpreted this statutory standard to mean that the IJ's factual findings—including her adverse credibility determinations—merit deference so long as they are supported by substantial evidence. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). The "substantial evidence" standard requires that the factual findings be based on "reasonable, substantial[,] and probative evidence in the record." *Lin Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 116 (2d Cir. 2007) (quoting *Islami v. Gonzales*, 412 F.3d 391, 396 (2d Cir. 2005)).

But, in dealing with cases like this, we must also be mindful of the Supreme Court's holding in *S.E.C. v. Chenery Corp.*, 318 U.S. 80 (1943). *Chenery* instructs us that "a judicial judgment cannot be made to do service for an administrative judgment." *Id.* at 88. That is because, if the administrative order is "based upon a determination of law . . . [, that] order may not stand if the agency has misconceived the law." *Id.* at 94. The agency must reconsider the matter free from the error it made. For these reasons, our Court has repeatedly held that, where factual findings "rely upon legal errors, the appropriate remedy is generally to vacate those findings and remand to the BIA for reconsideration of an applicant's claim."

*Li Hua Lin v. U.S. Dep't of Justice*, 453 F.3d 99, 106 (2d Cir. 2006). But we must do so, we added, only unless a remand would be futile. *Id.* at 106-07.

In Gurung's case, we conclude that two of the three purported inconsistencies on which the IJ relied were not inconsistencies at all. And we have doubts that—in the absence of those errors—the IJ would have reached the same conclusion based on the third inconsistency alone. We therefore cannot say, as required by *Chenery* and *Li Hua Lin*, that remanding the case to the BIA would be futile.

**I.**

The first two purported inconsistencies noted by the IJ—concerning the severity of Gurung's father's beating and the details of Gurung's encounter with the police—are not in fact inconsistent. In reviewing an IJ's evaluation of a witness's credibility, we require that evaluation to be "tethered to the evidentiary record." *Siewe v. Gonzales*, 480 F.3d 160, 169 (2d Cir. 2007). And, here, we conclude that a reasonable reading of the record fails to support an inconsistency finding.

That Gurung's father was beaten "almost to death" is just another way of saying that an elderly person was beaten "very badly." This is what Gurung's later statement asserted.

Similarly, Gurung's account of his exchange with the police is consistent. He handed over a written complaint, and they took it and read it. They then handed it back to him without filing a report.

We believe it to be well worth emphasizing that trivial differences in the wording of statements describing the same event are not sufficient to create

inconsistencies. This is especially so where an immigrant applicant is relying on an interpreter to convey his story, as Gurung did here.

Credibility should not be questioned based on trivial differences in word choices alone. Once an inconsistency has been identified, "[a] petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." *Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) (internal quotation marks and citations omitted). It is essential that petitioners be asked to meet this stringent standard *only* where there is, indeed, something to explain away.

## II.

This leaves us with the third possible inconsistency that the IJ identified: the dates of Gurung's 2012 assault and hospitalization.

Because the IJ based her determination on the totality of the circumstances as she evaluated them, we cannot say with confidence that this inconsistency alone—between February 10 and February 20, 2012—amounts to "substantial evidence" capable of supporting an adverse credibility finding. As we recently explained in *Hong Fei Gao v. Sessions*, 891 F.3d 67, 77 (2d Cir. 2018), "[a] trivial inconsistency . . . that has no tendency to suggest a petitioner fabricated his or her claim will not support an adverse credibility determination." Therefore, for example, we have held that "a reasonable fact-finder could not conclude that [a petitioner]'s credibility was undermined solely by the minor inconsistencies remaining in her testimony about whether her mother-in-law was taken as a

hostage on September 22 or 23 of 2000 or when she was notified about the . . . fine." *Su Chun Hu v. Holder*, 579 F.3d 155, 160 (2d Cir. 2009) (per curiam). [1]

But we do not need to go as far as we did in *Hong Fei Gao* or *Su Chun Hu* at this time in this case. When an administrative agency—as here—has based its decision in part on a legal error, it is important to remember what our Court's role is. In such situations, our job is generally *not* to decide whether the agency could have reached the same result based on the remaining evidence. The standard that we apply is not sufficiency of the evidence. *Chenery* forecloses that. *See* 318 U.S. at 94 (concluding that an administrative ruling "may not stand if the agency has misconceived the law").

At the same time, we are cognizant of the extraordinary number of vacaturs and remands that an intransigent interpretation of *Chenery* would require. In the immigration context, errors by overworked IJs are inevitably legion. Therefore, where the IJ or the BIA has committed legal error, we will nonetheless affirm as long as we can do so consistently with *Chenery*. That is, we will affirm *only* when

---

[1] In asserting the inconsistency concerning the dates of his hospitalization, the agency relies in part on omissions in Gurung's application. That is probably erroneous. Although Gurung submitted documents proving he received medical treatment following the 2012 assault, his written statement did not mention his trip to the hospital. Similarly, his wife's letter did not say anything about it. In our recent opinion in *Hong Fei Gao*, however, our Court has pointed out how "omissions are less probative of credibility than inconsistencies created by direct contradictions in evidence and testimony." 891 F.3d at 78 (internal quotation marks and citations omitted). In particular, the omission from Gurung's written statement of any reference to medical treatment, as in *Hong Fei Gao*, "was not *inconsistent* with [his] initial accounts. The information was supplementary, not contradictory: that [his] beating[] warranted medical attention reinforces [his] claims of persecution." *Id.* at 79. Similarly, the fact that the letter from Gurung's wife omitted the visit to the hospital has "little, if any, weight"—because, "where a third party's omission creates no *inconsistency* with an applicant's own statements," the petitioner need not "speculate about the state of mind" of that third party. *Id.* at 81.

remanding the case to the agency would be futile—namely, "a) when the IJ articulates an alternative and sufficient basis for her determination; b) when her reliance on the erroneous aspect of her reasoning is substantially tangential to her non-erroneous findings; or c) when overwhelming evidence in the record makes it clear that the same decision is inevitable on remand, or, in short, *whenever* the reviewing panel is confident that the agency would reach the same result upon a reconsideration cleansed of errors*." Li Hua Lin*, 453 F.3d at 107.

In other words, under *Chenery* and *Li Hua Lin*, we cannot affirm simply because we believe that the agency is likely to come out the same way, or because we would—in our own judgment—come out that way. When the agency has denied asylum and related relief on credibility grounds, we can (and we will) affirm only if (a) the agency offered a clearly independent and sufficient ground for its ruling, one that is not affected by any erroneous adverse credibility findings, or (b) the evidentiary record includes statements that are so inconsistent that we can be confident that the agency would not accept any kind of explanation.

In the instant case, we have doubts that—in the absence of legal error—the agency would have reached the same conclusion. Accordingly, we need not decide whether, under our precedents, the inconsistency concerning the dates of Gurung's assault and hospitalization would be sufficient to justify an adverse credibility finding at all. Remanding to the BIA is clearly not futile.

## CONCLUSION

We **GRANT** Gurung's petition for review, **VACATE** the BIA's order of removal, and **REMAND** the case to the agency for reconsideration consistent with this opinion.