Halinskyi v. Barr

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of May, two thousand twenty.

PRESENT:     JOHN M. WALKER, JR.,
             ROSEMARY S. POOLER,
             GERARD E. LYNCH,
                  *Circuit Judges.*
_____

BORYS HALINSKYI,

                  *Petitioner*,

         v.                                                          18-1413

WILLIAM P. BARR, UNITED STATES
ATTORNEY GENERAL,

                  *Respondent*.
_____

Appearing for Petitioner:     Vladislav S. Sirota, Brooklyn, N.Y.

Appearing for Respondent:    Joanna L. Watson, Trial Attorney, Office of Immigration
                             Litigation (Joseph H. Hunt, Assistant Attorney General; Sabatino
                             F. Leo, Senior Litigation Counsel, *on the brief*), United States
                             Department of Justice, Washington, D.C.

Petition for review of an order of the Board of Immigration Appeals.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that this petition for review of a decision of the Board of Immigration Appeals ("BIA") be and it hereby is **GRANTED**, the order of removal is **VACATED**, and the case is **REMANDED**.

Petitioner Borys Halinskyi seeks review of a Board of Immigration Appeals ("BIA") decision affirming the decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and protection under the Convention Against Torture. *In re Borys Halinskyi*, No. A202 018 634 (B.I.A. Apr. 20, 2018), *aff'g* No. A202 018 634 (Immigration Ct. N.Y.C. May 30, 2017). We assume the parties' familiarity with the underlying facts, issues, and procedural history.

Under the circumstances of this case, we have reviewed both the decisions of the IJ and the BIA. *See Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005). Halinskyi challenges the IJ's adverse credibility determination and the IJ's reliance on Halinskyi's asylum interview in assessing his credibility.

The IJ concluded that Halinskyi was not credible based on two inconsistencies and an omission in his testimony. The IJ further found that Halinskyi's return trip to Ukraine suggested he was not genuinely fearful of return and that he had not adequately corroborated his claim.

The inconsistencies identified by the IJ are insufficient to find that Halinskyi was not entirely credible. "A trivial inconsistency or omission that has no tendency to suggest a petitioner fabricated his or her claim will not support an adverse credibility determination." *Hong Fei Gao v. Sessions*, 891 F.3d 67, 77 (2d Cir. 2018).

The IJ first found that Halinskyi had omitted from his affidavits any information regarding vandalism to his store and his wife's questioning. But that finding is clearly erroneous. Halinskyi did, in fact, describe this incident in his first affidavit. While it is true that the incident is not discussed in Halinskyi's subsequent affidavit, the second affidavit appears to have been offered as a supplemental submission, not intended to supersede his first affidavit. The IJ thus erred in holding that Halinskyi omitted this incident from his affidavits and in relying on the perceived omission to support an adverse credibility finding. *See Gurung v. Barr*, 929 F.3d 56, 61 (2d Cir. 2019).

Another inconsistency the IJ relied on is the discrepancy between Halinskyi's description of the beatings he received during the January 2014 attack. The IJ emphasized that although Halinskyi said during his asylum interview that his ribs had been broken, during his hearing testimony he testified that he had not been diagnosed with broken ribs but had a lot of pain in his body around his ribs.

This discrepancy amounts to nothing more than "trivial differences in the wording of statements describing the same event," which we have held "are not sufficient to create inconsistencies." *Gurung*, 929 F.3d at 61; *see also Cojocari v. Sessions*, 863 F.3d 616, 624-25 (7th Cir. 2017) (concluding that inconsistencies between one medical certificate characterizing a shoulder injury as "a dislocated right shoulder and bruises on his right arm" and another

2

characterizing the injury as "a closed fracture of the 'radial bone' in his right arm along with 'multiple hematomas'" did not support an adverse credibility finding). The variation in Halinskyi's description of his chest injury does not suggest that he is fabricating his claim, particularly when considered in light of the totality of Halinskyi's otherwise-consistent testimony regarding the January 2014 attack. *See Hong Fei Gao*, 891 F.3d at 77.

The IJ also pointed to the discrepancy between Halinskyi's statement during his asylum interview that he sought medical help after his January 2014 attack and his subsequent statements that he did not seek medical help after his January 2014 attack, but rather after his February 2014 attack. Halinskyi asserts that he misunderstood during his asylum interview whether the relevant question pertained to the January 2014 or February 2014 incident.

Under the circumstances of this case, this inconsistency cannot bear much weight. While the IJ was not compelled to accept Halinskyi's explanation that he misunderstood the asylum officer's question, Halinskyi consistently testified elsewhere—including earlier in the asylum interview—that he sought medical care only after the February 2014 attack. The two attacks, which were in many respects similar, were separated by a period of only a few weeks, making it somewhat more understandable that Halinskyi might confuse the sequence of events. *Hong Fei Gao*, 891 F.3d at 78 n.3; *see also Wang v. Lynch*, 845 F.3d 299, 302 (7th Cir. 2017) (noting that a one-year discrepancy in the date of a concussion is trivial). The possibility of confusion is further amplified where the supposedly inconsistent statement was made during an asylum interview that is not transcribed verbatim, and was made through an interpreter.[1] Taken all in all, we cannot rely on this isolated minor discrepancy to affirm an adverse credibility finding.

Accordingly, the IJ's credibility analysis rests on one erroneous finding and two trivial inconsistencies. Because we are not confident that the IJ would reach the same conclusion in the absence of error, we remand this case for further proceedings. *See Gurung*, 929 F.3d at 62.

On remand, the IJ will be free to reconsider whether Halinskyi's return trip to Ukraine undermines the veracity of his claimed fear. In this regard, however, we note that we have held that a return trip does not in itself render a petitioner's claimed fear incredible, because there are various circumstances in which "a person very well might risk persecution to return to his or her home country." *Kone v. Holder*, 596 F.3d 141, 150 (2d Cir. 2010). Here, Halinskyi testified that he only returned because his mother was hospitalized and he thought she was about to die. He

---

[1] Although Halinskyi argues that relying on his asylum interview violates his due process right, we disagree. In assessing whether reliance on evidence violates a petitioner's due process right, we have said that "due process is satisfied if the evidence is probative and its use is fundamentally fair, fairness in this context being closely related to the reliability and trustworthiness of the evidence." *Zerrei v. Gonzales*, 471 F.3d 342, 346 (2d Cir. 2006) (internal quotation marks and citation omitted). There is little doubt that the asylum interview is probative evidence in Halinskyi's asylum proceedings, and because the portions of the interview record relied upon here contained a "meaningful, clear, and reliable summary" of the questions and Halinskyi's responses, the evidence is sufficiently reliable. *See Diallo v. Gonzales*, 445 F.3d 624, 632-33 (2d Cir. 2006) (internal quotation marks and citation omitted). Therefore, we conclude that reliance on portions of these notes did not violate Halinskyi's due process right.

described the various precautions that he took to ensure his safety upon his return, including staying in a village far outside the city, going nowhere other than the hospital, and not telling even close relatives that he had returned. Those facts should be taken into account as the IJ undertakes the required "nuanced consideration of the circumstances surrounding [Halinskyi's] return[]."

We also conclude that the IJ erred in requiring corroborative evidence without first discussing whether this evidence was "obviously material and reasonably available," *Manning v. Barr*, 954 F.3d 477, 485 (2d Cir. 2020), and in discounting corroboration that Halinskyi did offer. It is not clear that medical evidence, even if material, would be reasonably available to Halinskyi. Indeed, it seems apparent from the record that there would be no corroborative medical records at least for Halinskyi's injuries since he did not ultimately receive medical treatment. *See Tandia v. Gonzales*, 487 F.3d 1048, 1056 (7th Cir. 2007) (explaining that corroborating evidence of injuries was not required because the petitioner did not go to a hospital).

We note that the IJ peremptorily discounted a corroborating affidavit from Halinskyi's wife, without assessing her credibility, citing cases holding that an IJ may discount affidavits from interested parties who are abroad and not subject to cross-examination. *See, e.g.*, *Matter of H-L-H- & Z-Y-Z-*, 25 I&N Dec. 209, 215 (B.I.A. 2010), abrogated on other grounds by *Huang v. Holder*, 677 F.3d 130 (2d Cir. 2012). But that is not what happened here. Halinskyi's wife appeared in court and was cross-examined on the contents of her affidavit. Of course, the IJ was permitted to assess the witness's credibility, and the fact of her interest in the outcome is relevant to that determination. But the IJ did not make an adverse credibility finding about Halinskyi's wife. Absent such a finding, we see no reasoned basis to simply discount her affidavit. The IJ also discounted a document "prepared" by Halinskyi's mother on the same grounds. Special App'x at 15. As Halinskyi's mother did not submit an affidavit, we presume this refers to the certificate from a Ukrainian government official documenting an official report made by Halinskyi's mother after his car was vandalized. That document was clearly not prepared by Halinskyi's mother and the IJ erred in discounting it as corroboration from an interested party. There is no doubt that an applicant's mother may be biased in his favor. But the IJ's mischaracterization of the document distinguishes the case from those regarding unsworn, uncross-examined letters from interested witnesses located abroad. It is easy for a person abroad to send an unsworn letter for use in a proceeding in the United States; it is quite something else to make a formal complaint to potentially hostile authorities in one's own country. The IJ on remand should thus reassess Halinskyi's proffered corroborative evidence after considering their actual nature.

For the foregoing reasons, the petition for review is GRANTED, the order of removal is VACATED, and the case is REMANDED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

4