*Sanchez Gonzalez v. Garland*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of February, two thousand twenty-four.

PRESENT:
>
> PIERRE N. LEVAL,
> REENA RAGGI,
> JOSEPH F. BIANCO,
>     *Circuit Judges*.

_____

MARVIN RAUL SANCHEZ GONZALEZ,

        *Petitioner*,

        v.                                                             23-6039

MERRICK B. GARLAND, UNITED STATES
ATTORNEY GENERAL,

        *Respondent*.

_____

FOR PETITIONER:                 CAITLIN J. BAILEY (Lauren Rosenberg, *on the brief*), Cravath, Swaine & Moore LLP (Sayoni Maitra, The Legal Aid Society, *on the brief*), New York, New York.

FOR RESPONDENT:                 GREGORY M. KELCH, Senior Trial Attorney, Office of Immigration Litigation (Brian M. Boynton, Principal Deputy Assistant Attorney General, and Walter Bocchini, Senior Litigation Counsel, *on the brief*), United States Department of Justice, Washington, District of Columbia.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.

Petitioner Marvin Raul Sanchez Gonzalez, a native and citizen of Honduras, seeks review of a decision of the BIA, affirming the decision of an Immigration Judge ("IJ"), which denied his applications for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). *Marvin Raul Sanchez Gonzalez,* No. A 201-517-900 (B.I.A. Jan. 6, 2023), *aff'g* No. A 201-517-900 (Immigr. Ct. N.Y.C. Apr. 25, 2022). In his applications, Sanchez Gonzalez claimed that he suffered past persecution and had a well-founded fear of future persecution by the MS-13 gang (the "gang") due to, *inter alia*, his anti-gang or pro-military political opinion and familial relation to former members of the Honduran military. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to deny the petition.

We review the IJ's decision as modified by the BIA. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005). We review the agency's "legal conclusions *de novo*, and its factual findings . . . under the substantial evidence standard." *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) (internal quotation marks and citation omitted). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ." 8 U.S.C. § 1252(b)(4)(B).

I.      **Asylum and Withholding of Removal**

To be eligible for asylum or withholding of removal, an applicant must show that "he or she has suffered past persecution or . . . has a well-founded fear of," 8 C.F.R. § 1208.13(b) (asylum), or a "clear probability of future persecution," *Jian Liang v. Garland*, 10 F.4th 106, 112

(2d Cir. 2021); 8 C.F.R. § 1208.16(b) (withholding), and that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for [that] persecut[ion]." 8 U.S.C. § 1158(b)(1)(B)(i); *see also Quituizaca v. Garland*, 52 F.4th 103, 114 (2d Cir. 2022) (holding that BIA's interpretation that the "one central reason" standard applies to both asylum and withholding of removal claims was reasonable and entitled to deference). In other words, the applicant must demonstrate a nexus between the feared persecution and one of the statutorily protected grounds. *Quituizaca*, 52 F.4th at 107. Sanchez Gonzalez argues that the agency erred in finding that he failed to meet his burden of establishing a nexus to a protected ground. We disagree.[1]

An applicant may sustain his or her burden by testimony alone, "but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii); *accord Pinel-Gomez v. Garland*, 52 F.4th 523, 529–30 (2d Cir. 2022) ("[The agency may] find[] an applicant's testimony credible [but] still decide that the testimony falls short of satisfying the applicant's burden of proof, either because it is unpersuasive or because it did not include specific facts sufficient to demonstrate that the applicant is a refugee." (internal quotation marks and citation omitted)). In making this determination, "the trier of fact may weigh the credible testimony along with other evidence of record." 8 U.S.C. § 1158(b)(1)(B)(ii). "Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise

---

[1] As an initial matter, the agency found Sanchez Gonzalez ineligible for asylum because he did not timely file his application. However, we need not reach that issue because, as discussed *infra*, the agency's alternative determination on the merits is supported by substantial evidence and is dispositive of both the asylum and withholding of removal claims. *See I.N.S. v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); *Gurung v. Barr*, 929 F.3d 56, 62 (2d Cir. 2019) (noting that remand is not necessary "when the IJ articulates an alternative and sufficient basis for her determination").

credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id.*

"[W]hen an IJ determines that the applicant failed to meet his burden of proof based on the failure to provide corroborating evidence, the IJ should perform the following analysis: (1) point to specific pieces of missing evidence and show that [such evidence] was reasonably available, (2) give the applicant an opportunity to explain the omission, and (3) assess any explanation given." *Wei Sun v. Sessions*, 883 F.3d 23, 31 (2d Cir. 2018). "No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4).

Here, the agency determined that Sanchez Gonzalez did not meet his burden to establish a nexus to a protected ground because his testimony, although credible, was not persuasive and was not corroborated with respect to certain material issues, including why the gang targeted him, whether and why the gang targeted his brother, and whether and why the gang targeted his father. As the government points out, Sanchez Gonzalez has not explicitly challenged the agency's conclusions that his testimony alone was not sufficiently persuasive and that he did not corroborate his allegations that he and his family were targeted because of his father's former military service or his father's work guarding stores and banks. Accordingly, he has abandoned review of those issues. *See Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) (per curiam) ("We consider abandoned any claims not adequately presented in an appellant's brief, and an appellant's failure to make legal or factual arguments constitutes abandonment." (internal quotation marks and citation omitted)).

In any event, the agency did not err in concluding that Sanchez Gonzalez failed to meet his

4

burden of proof as to the requisite nexus because his testimony was insufficient in the absence of corroborating evidence. *See* 8 U.S.C. § 1158(b)(1)(B)(ii). As the IJ noted, Sanchez Gonzalez's statements were not consistent or clear as to why the gang targeted him or how he came to believe the gang targeted him for specific reasons other than recruitment.

Moreover, the IJ identified other evidence in the record—specifically, letters and affidavits from family members—that could have corroborated the reasons for Sanchez Gonzalez's recruitment and abduction by the gang, but did not. Sanchez Gonzalez stated in a declaration that the gang forcibly took possession of his father's house, and Sanchez Gonzalez testified that the gang tried to recruit him because of his father's military service and that they tried to recruit his brother as well; however, his family members did not mention either the gang's possession of his father's home or the gang's recruitment of his brother in their statements or identify why the gangs may have targeted Sanchez Gonzalez. For instance, while his sister stated that their father "worked in the armed forces" and that the gang threatened Sanchez Gonzalez, abducted him, threatened their family, and asked the family for money, she did not confirm that another brother was targeted or that the gang seized their father's house. Certified Administrative Record ("CAR") at 327. She also did not link Sanchez Gonzalez's harm to their father's past or current employment. Similarly, his parents' letter stated that Sanchez Gonzalez's father was in the military as a young man, and that the gang tried to force Sanchez Gonzalez to join because it was "dedicated to stealing, killing and extorting people," but did not link Sanchez Gonzalez's harm to his father's military service or employment, or confirm his allegations that the gang tried to recruit his brother or seize his father's house. CAR at 334.

When Sanchez Gonzalez was questioned about the availability of corroborating evidence at the hearing, he did not show that any such evidence was unavailable. *See Wei Sun*, 883 F.3d at

5

31 (noting that the IJ should "give the applicant an opportunity to explain the omission" and "assess any explanation given"); *see also* 8 U.S.C. § 1252(b)(4). For example, Sanchez Gonzalez's testimony that, before he fled Honduras, he provided his father with at least a brief explanation as to the basis for the gang's interest in him, and that his parents' letter omitted certain details because he "didn't have communication with [his] dad to tell him what he needed in the letter," CAR at 290, indicates that corroborating evidence was available. Accordingly, Sanchez Gonzalez had the "ultimate burden of introducing such evidence without prompting from the IJ." *Wei Sun*, 883 F.3d at 31 (internal quotation marks and citation omitted). The agency also reasonably gave diminished weight to the letters because his family members "were interested parties and [not] available for cross-examination." *Likai Gao v. Barr*, 968 F.3d 137, 149 (2d Cir. 2020).

Given the inconsistencies and the lack of corroboration of Sanchez Gonzalez's assertions regarding the gang's basis for targeting him, the agency did not err in finding that Sanchez Gonzalez failed to satisfy his burden to establish that he was targeted on account of a protected ground, *i.e.*, for reasons other than the gang's desire to increase its numbers or fill its coffers. *See Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007) (per curiam) ("When the harm visited upon members of a group is attributable to the incentives presented to ordinary criminals rather than to persecution, the scales are tipped away from considering those people a 'particular social group' within the meaning of the [Immigration and Nationality Act]."). Furthermore, Sanchez Gonzalez did not identify a way in which his opposition to the gang "took on a political dimension by transcending mere self-protection." *Hernandez-Chacon v. Barr*, 948 F.3d 94, 104 (2d Cir. 2020).

In sum, we conclude that substantial evidence supported the agency's determination that Sanchez Gonzalez failed to demonstrate a nexus to a protected ground that would support asylum

or withholding of removal.

## II.    CAT Relief

Unlike asylum or withholding of removal, CAT relief does not require a nexus to a protected ground, but instead requires the applicant "to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."   8 C.F.R. § 1208.16(c)(2).   "Analysis of a CAT claim boils down to a two-step inquiry."   *Garcia-Aranda v. Garland*, 53 F.4th 752, 758 (2d Cir. 2022).   "First, the applicant must show that . . . . he or she will more likely than not be subject to any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as intimidating or coercing him or her or a third person."   *Id.* at 758–59 (alteration adopted) (internal quotation marks and citations omitted).   Second, "the applicant must show that his or her likely future harm will be 'inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity.'"   *Id.* at 759 (quoting 8 C.F.R. § 1208.18(a)(1)); *see also Pierre v. Gonzales*, 502 F.3d 109, 118 (2d Cir. 2007) ("A *private* actor's behavior can constitute torture under the CAT without a government's specific intent to inflict it if a government official is aware of the persecutor's conduct and intent and acquiesces in violation of the official's duty to intervene.").

As an initial matter, we find unpersuasive Sanchez Gonzalez's contention that the agency failed to consider relevant country conditions evidence and committed legal error in determining that he had not established a likelihood of torture by, or with the acquiescence of, Honduran officials.   To be sure, an error of law may occur when the agency "totally overlook[s]" or "seriously mischaracterize[s]" material facts.   *Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009) (per curiam).   However, contrary to Sanchez Gonzalez's assertion, the record reflects that the IJ

7

and BIA considered the evidence in the record on this issue.

The IJ concluded—in light of the country conditions evidence showing efforts by the Honduran government to combat gang violence and corruption—that there was "insufficient evidence to demonstrate it is more likely than not the Honduran government would torture [Sanchez Gonzalez]" and, "because the [Honduran] government is actively combatting corruption and organized crime, [the IJ could not] find that the Honduran government would acquiesce to any harm MS-13 gang members might seek to inflict upon [Sanchez Gonzalez] if he is removed to Honduras." CAR at 181. The BIA affirmed those findings. *See* CAR at 9 ("[W]e discern no clear error in the Immigration Judge's factual findings supporting his determination that [Sanchez Gonzalez] did not meet his burden to establish a sufficient likelihood that he would be tortured in Honduras. . . . We conclude that the police's lack of knowledge of the threats directed at [Sanchez Gonzalez] coupled with country conditions evidence demonstrating the Honduran government's efforts to combat official corruption support the Immigration Judge's determination that a qualifying individual would not consent or acquiesce to his torture by private actors.").

On appeal to the BIA, Sanchez Gonzalez argued that, although the IJ discussed the Honduran government's efforts to address corruption and gang violence, it did not adequately address the government's treatment of criminal deportees. The BIA rejected this argument, stating that the IJ considered evidence that the Honduran government had "taken steps to investigate instances of abuse and torture, investigate abuses within the military, and train law enforcement officials in human rights compliance." *Id*. Because these efforts would address torture directed at Sanchez Gonzalez by government officials for *any* reason, we find that the agency considered his asserted grounds for CAT relief and concluded that he had failed to meet his burden.

Substantial evidence in the record supported the agency's determination. For example, the Honduras 2020 Human Rights Report issued by the U.S. State Department states that "the government [of Honduras] took steps to address corruption at high levels in government agencies, including arresting and charging members of congress, judges, prosecutors, sitting and former senior officials, mayors and other local authorities, and police officers." CAR at 598–99. Although Sanchez Gonzalez notes some evidence to support his position, because the evidentiary record does not compel the contrary conclusion, we are required to accept the agency's factual findings. *See Mu Xiang Lin v. U.S. Dep't of Just.*, 432 F.3d 156, 159 (2d Cir. 2005) ("[W]e will uphold the BIA's decision unless the petitioner demonstrates that the record evidence was so compelling that no reasonable factfinder could fail to find him eligible for relief under the Convention Against Torture." (alterations adopted) (internal quotation marks and citation omitted)).

\*                \*                \*

For the foregoing reasons, the petition for review is **DENIED**. All pending motions and applications are **DENIED** and stays **VACATED**.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

9