Berhe v. Garland

BIA
Hoover, IJ
A213 482 553

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of February, two thousand twenty-four.

PRESENT:
> RICHARD C. WESLEY,
> DENNY CHIN,
> EUNICE C. LEE,
> > *Circuit Judges.*

_____

BEREKET ARAYA BERHE,
> *Petitioner*,

v.                                                                          **21-6042**

MERRICK B. GARLAND, UNITED STATES
ATTORNEY GENERAL,
> *Respondent*,

_____

FOR PETITIONER:                    BENJAMIN R. WINOGRAD, Immigrant & Refugee
                                                 Appellate Center, LLC, Alexandria, VA.

FOR RESPONDENT:                    TIM RAMNITZ, Senior Litigation Counsel, Office of Immigration Litigation (Shelley R. Goad, Assistant Director, *on the brief*), *for* Brian M. Boynton, Principal Deputy Assistant Attorney General, United States Department of Justice, Washington, DC.

FOR AMICI CURIAE:                  Julie Dona, The Legal Aid Society, New York, NY; Jessica Swensen, The Bronx Defenders, Bronx, NY; Alexandra Lampert, Brooklyn Defender Services, Brooklyn, NY.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Petitioner Bereket Araya Berhe, a native and citizen of Eritrea, seeks review of a December 29, 2020 decision of the BIA affirming an August 3, 2020 decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Bereket Araya Berhe*, No. A213 482 553 (B.I.A. Dec. 29, 2020), *aff'g* No. A213 482 553 (Immigr. Ct. N.Y.C. Aug. 3, 2020). We assume the parties' familiarity with the underlying facts and procedural history.

As an initial matter, the Government no longer argues that venue is proper in the U.S. Court of Appeals for the Fifth Circuit. Venue is proper here because, although Berhe's charging document ordered his appearance in an immigration court in Louisiana, he was served with a Form I-831 directing him to appear at a new court location in New

2

York, his charging document was then filed in that New York court, and venue was not later changed. *See* 8 U.S.C. § 1252(b)(2) ("The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings."); *Sarr v. Garland*, 50 F.4th 326, 332 (2d Cir. 2022) ("[A]n IJ 'completes' proceedings and, thus, venue lies in the location where—absent evidence of a change of venue—proceedings commenced" by the filing of a notice to appear in immigration court.); *Matter of Garcia*, 28 I. & N. Dec. 693, 703 n.13 (B.I.A. 2023) ("[T]he new location identified on the Form I-831 will generally be the court where venue lies."). Because venue is proper here, we apply this Circuit's law. *Matter of Garcia*, 28 I. & N. Dec. at 703 (holding that "the controlling circuit law in Immigration Court proceedings for choice of law purposes is the law governing the geographic location of the Immigration Court where venue lies").

Under the circumstances, we have reviewed both the IJ's and the BIA's opinions. *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). We review an adverse credibility determination "under the substantial evidence standard," *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018), and "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).

3

"Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, [and] the consistency of such statements with other evidence of record . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii).   "We defer therefore to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling."   *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao*, 891 F.3d at 76.

Berhe asserted that the Eritrean military detained and beat him because he complained about conditions during his mandatory military service and because of his perceived anti-government political opinion.   The agency's adverse credibility determination is not supported by substantial evidence.

The agency first relied on Berhe's omission from his testimony that, after his first interrogation and beating, he was tied up and left outside overnight before being sent to prison.   Although "in general, 'omissions are less probative of credibility than inconsistencies created by direct contradictions,'" the agency may rely on an omission of

4

facts that "are ones that a credible petitioner would reasonably have been expected to disclose under the relevant circumstances." *Hong Fei Gao*, 891 F.3d at 78–79 (quoting *Lai v. Holder*, 773 F.3d 966, 971 (9th Cir. 2014)). Berhe's attorney did not pose questions that would have elicited details of Berhe being tied up and left outside on direct examination. Instead, the record reflects that the IJ interrupted direct examination in an effort to get a chronology of events. When the IJ asked Berhe "[w]hat else happened" after he was beaten with the butt of a rifle during that first interrogation, Berhe replied that he was taken to prison without disclosing that he was first tied up and left outside overnight. Certified Administrative Record at 132–33 ("CAR"). The IJ was not compelled to credit Berhe's explanation that his attorney had not asked him about the incident given the IJ's question. *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (internal quotation marks omitted)). Nonetheless, the IJ overemphasized the importance of this omission, twice speculating that this incident appeared to be the most significant harm Berhe had suffered in that meeting despite Berhe's testimony that he was struck in the face with a rifle butt. *See Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007) ("[W]e will reject a deduction made by an IJ . . . when there is a complete absence

5

of probative facts to support it—that is, when the speculation is bald." (internal quotation marks omitted)).

Nor does the record adequately support the agency's inconsistency findings. The agency found Berhe's descriptions of his escape from detention inconsistent. In his asylum application, Berhe stated that, while being transported with other prisoners, the truck they were riding in slowed down for water in the road, at which point he jumped off the truck. He further stated that the guards shot at him, but he kept running. At his hearing, he testified that he jumped out of the truck when it slowed down for river water, he fell after jumping out, he paused, and when the truck continued moving forward, he ran away. The IJ mischaracterized Berhe's testimony, stating that Berhe had not mentioned anybody shooting at him when asked, even though he had not been asked what happened while he was running away. Instead, he was only asked what he *did* after jumping out of the truck.

Further, Berhe's descriptions of his escape were not inconsistent because, contrary to the IJ's finding that his application suggested that guards fired on him immediately when he jumped out of the vehicle, he wrote, "I jumped off the vehicle" without stating that he was shot at then. CAR at 248. He next wrote, "[t]he guards were shooting at me, but I just kept running," implying that they shot at him while he ran. *Id*. The fact that he did not describe falling to the ground for a moment before running and being shot

6

at until his hearing—where he was asked specifically what happened when he jumped from the truck—does not support a finding that the two descriptions were inconsistent. *See Gurung v. Barr*, 929 F.3d 56, 61 (2d Cir. 2019) ("[T]rivial differences in the wording of statements describing the same event are not sufficient to create inconsistencies. This is especially so where an immigrant applicant is relying on an interpreter to convey his story, as [the applicant] did here.").

The agency further erred in finding Berhe's testimony inconsistent regarding his health at the time of his escape and concluding that it called into question his testimony that he was able to physically run away after jumping from the truck. Contrary to the IJ's findings, Berhe did not testify on direct or cross that he was extremely malnourished at the two prisons where he was detained; rather, he testified that he was malnourished and ill while travelling between two military bases during his military service and while being held at the first prison. The IJ also mischaracterized Berhe's testimony, finding that Berhe repeatedly claimed that he could not walk while detained due to the mistreatment he suffered, when he only once affirmed that his injuries hampered him from walking for periods of time at the second prison where he was detained for one year. The IJ also erred in finding that Berhe changed his testimony regarding his condition at the second prison from testifying on direct that he could not walk to claiming on cross-examination that he had healed; rather, he testified on direct that injuries from

7

rope burns had impaired his ability to walk in the second prison, while he also testified on cross that he had gained strength from better nourishment at the second prison after having been deprived of food at the first prison. Berhe's inability to walk due to injury was unrelated to his strength from nutrition, and thus his testimony on these two matters was not inconsistent.

Ultimately, the agency's finding related to Berhe's omission from his testimony that he was tied up and left outside overnight was the only finding supported by the record. However, the IJ erred in affording that omission substantial weight based on speculation that this incident was more significant than being struck in the face with the butt of a rifle, and, as the IJ acknowledged, that omission alone was insufficient to support an adverse credibility determination and thus remand is required. *See Hong Fei Gao*, 891 F.3d at 78; *see also Gurung*, 929 F.3d at 62 (holding that, as relevant here, "we will affirm *only* when remanding the case to the agency would be futile—namely . . . when . . . the erroneous aspect of [the IJ's] reasoning is substantially tangential to her non-erroneous findings"). On remand, the agency should also apply Second Circuit rather than Fifth Circuit case law, *see Matter of Garcia*, 28 I. & N. Dec. at 703 n.13, and evaluate Berhe's independent CAT claim based on his unauthorized departure from Eritrea and application for asylum.

Because we are vacating the BIA's decision and remanding to the BIA for reconsideration, we need not reach Berhe's argument that the temporary BIA member who dismissed his appeal did not have the regulatory authority to do so. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

For the foregoing reasons, Respondent's motion to transfer venue is DENIED, the petition for review is GRANTED, the BIA's decision is VACATED, and the case is REMANDED for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

9