*Sahni v. Bondi*

BIA
Poczter, IJ
A209 394 192

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of September, two thousand twenty-five.

PRESENT:
> JON O. NEWMAN,
> BARRINGTON D. PARKER,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

_____

SUNNY SAHNI,
> *Petitioner,*

v.                                                                          22-6333

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

**FOR PETITIONER:**    Jaspreet Singh, Law Office of Jaspreet Singh, Richmond Hill, NY.

**FOR RESPONDENT:**    Brian Boynton, Principal Deputy Assistant Attorney General; Jessica A. Dawgert, Senior Litigation Counsel; Sanya Sarich Kerksiek, Trial Attorney; Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED IN PART, and GRANTED IN PART and REMANDED for further proceedings.

Petitioner Sunny Sahni, a native and citizen of India, seeks review of a June 22, 2022, decision of the BIA affirming a May 24, 2019, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *See In re Sahni*, No. A 209 394 192 (B.I.A. June 22, 2022), *aff'g* No. A 209 394 192 (Immigr. Ct. N.Y.C. May 24, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

Where, as here, "the BIA briefly affirms the decision of an IJ and adopts the IJ's reasoning in doing so, we review the IJ's and the BIA's decisions together."

2

*Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006) (citation and quotation marks omitted). We review the agency's factual findings for substantial evidence and questions of law *de novo*. *See Jian Liang v. Garland*, 10 F.4th 106, 111 (2d Cir. 2021). The agency's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The agency found that Sahni suffered past persecution on account of his political opinion when members of the Bharatiya Janata Party ("BJP"), which was the party in power in his home state of Haryana, attacked him twice based on his work for the Indian National Lok Dal Party ("INLD"). He was therefore entitled to a presumption of a well-founded fear and likelihood of future persecution as required for both asylum and withholding of removal. *See* 8 C.F.R. §§ 1208.13(b)(1) (asylum), 1208.16(b)(1)(i) (withholding of removal). [1] The Department of Homeland Security ("DHS") may rebut that presumption if it establishes "by a preponderance of the evidence" that (1) "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country

_____

[1] Except as specified, citations are to the regulations in effect at the time of the IJ's 2019 decision.

of nationality" *and* (2) "under all the circumstances, it would be reasonable to expect the applicant to do so."   8 C.F.R. § 1208.13(b)(1)(ii), (b)(1)(i)(B); *see also id*. § 1208.16(b)(1)(ii), (b)(1)(i)(B); *Surinder Singh v. BIA*, 435 F.3d 216, 219 (2d Cir. 2006) ("Asylum in the United States is not available to obviate re-location to sanctuary in one's own country.").   The agency concluded that both prongs of this test were satisfied, rebutting the presumption.   Sahni contends that DHS failed to establish by a preponderance of the evidence "that Petitioner could reasonably relocate free of future persecution to other parts of the country."   Petitioner's Br. at 6.   We address each prong separately.

The petition is denied as to the agency's determination on prong one, that Sahni "could safely relocate in India."   Certified Admin. R. ("CAR") at 3. Substantial evidence supports the agency's finding that there were areas of India where Sahni would not have a well-founded fear of persecution.   *See Hui Lin Huang v. Holder*, 677 F.3d 130, 134 (2d Cir. 2012) ("A determination of what will occur in the future and the degree of likelihood of the occurrence has been regularly regarded as fact-finding subject to only clear error review.").   Sahni argues that he has a well-founded fear of persecution throughout India because the BJP workers who harmed him still intend to kill him; the BJP is active

4

nationally and wishes to recruit workers like himself; and he will come to his abusers' attention when he uses his identification to access essential services. Sahni also asserts that when he attempted to make a police report about his assault by BJP supporters, "[t]he police took his name and information" but they "did not take any report about the attack because they were working [for] the BJP party." Petitioner's Br. at 4. Indeed, the police threatened to arrest him if he made such a report in the future.

However, Sahni alleged persecution by *local* BJP supporters whom the *local* police refused to attempt to control; he did not allege any persecution by other government officials or by high-level BJP officials with national reach. That is insufficient to support a finding that he would be persecuted throughout India. *See Jagdeep Singh v. Garland*, 11 F.4th 106, 115 (2d Cir. 2021) ("An applicant's allegation that he was persecuted by members of a political party—even one that is in power nationally or . . . is aligned with a party in power nationally—does not establish that the applicant was persecuted by the government."). He testified that his own party was active only in his home state of Haryana, that he "was a worker of the party," CAR at 95, rather than a member, and that he was not working at a "high level," CAR at 112. While he alleged that the local police

5

wrote down his name and threatened him with arrest, he did not testify that the police retained his information, shared it with national authorities, or created a record that would reveal his political opinion if the police in another area conducted a search for information about him. Although a BJP-led coalition won the 2014 general elections, according to the U.S. State Department report in the record, the elections were "free and fair despite isolated instances of violence," and the report did not reflect that violent BJP recruiting efforts, or acts of violence against INDL members, were a concern. CAR at 180. Other country conditions evidence reported the creation of a biometric identification system in India that was mandatory for accessing government services and banks, and that landlords were required to register tenants with the police in some areas. *See* CAR at 272-73; 239. But nothing in the record suggests that the identification system was used to target people, like Sahni, who resisted BJP recruitment. On balance, this record does not compel a conclusion, contrary to the agency's, that it was reasonable to expect Sahni's former abusers to pursue him outside Haryana, or to expect that BJP members or government officials in a different area would identify him and single him out for abuse.

Further proceedings are required, however, with respect to the agency's

finding on the second prong, that internal relocation would be reasonable. The BIA properly cited regulations (8 C.F.R. §§ 1208.13, 1208.16) providing that DHS had the burden to show both that Sahni could avoid persecution by relocating within India and that such relocation would be reasonable and stated that those regulations applied. *See* CAR at 3. But it also cited Sections 1208.13(b)(3)(ii) and 1208.16(b)(3)(ii) for the proposition that, because the persecutors were not state actors, Sahni "was *not* entitled to a presumption that internal relocation would be unreasonable." CAR at 4 (emphasis added). And the reasoning of the IJ, adopted by the BIA, similarly placed the burden on Sahni to "establish that there were . . . administrative, economic, or judicial infrastructure issues . . . [or] any geographic limitations, social or cultural constraints such as age, gender, health and social or familial ties, that would prevent him from relocating to another state in India."[2] CAR at 63; *see also* 8 C.F.R. §§ 1208.13(b)(3), 1208.16(b)(3) (identifying factors relevant to the reasonableness of internal relocation).

---

[2] Contrary to Sahni's suggestion, *see* Petitioner's Br. at 15, DHS can carry its burden on an issue by "resting upon evidence already in the record," without necessarily presenting additional evidence on that issue. *In re H-*, 21 I. & N. Dec. 337, 346 (B.I.A. 1996). But it does *not* follow that DHS can rest on an absence of evidence on a point on which it bears the burden of proof. DHS still must *affirmatively* meet its "evidentiary burden" and show that Sahni could safely and reasonably relocate. *Kone v. Holder*, 596 F.3d 141, 150 (2d Cir. 2010).

We conclude that the agency erred in placing the burden on Sahni to show that relocation was *un*reasonable. At the time Sahni filed his application and the IJ adjudicated it, the regulations set a presumption that relocation was *not* reasonable if "the applicant has established persecution in the past." 8 C.F.R. § 1208.13(b)(3)(ii) (emphasis added) (version in effect until January 10, 2021); *see id.* § 1208.16(b)(3)(ii) (version in effect until January 10, 2021) (same, for withholding). This presumption applied to Sahni's claim because the agency found that Sahni had established past persecution. In shifting the burden to Sahni, the BIA appears to have relied on a final rule published *after* the IJ's decision. *See Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review*, 85 Fed. Reg. 80274, 80396, 80398 (2020) (as relevant here, removing the phrase "or the applicant has established persecution in the past" from Sections 1208.13(b)(3)(ii) and 1208.16(b)(3)(ii), and adding (b)(3)(iii), which sets a presumption that relocation *is* reasonable even where there was past persecution and places the burden on the applicant to prove otherwise, to both regulations). But this amendment does not apply to Sahni's claims because it post-dated the filing of Sahni's application, and its effect was expressly limited to future applications. *See id.* at 80380 ("[T]o the extent that the rule changes any

8

existing law, the Departments are electing to make the rule prospective to apply to all asylum applications—including applications for statutory withholding of removal and protection under the CAT regulations—filed on or after its effective date.").

In defending the agency's determination that relocation would be reasonable, the government repeats the agency's error of requiring Sahni to provide evidence that relocation would be *un*reasonable. But the decisions the government cites do not support this approach; to the contrary, they rely on record evidence supporting the conclusion that relocation would be *reasonable*. *See, e.g.*, *Jagdeep Singh*, 11 F.4th at 117 (substantial evidence supported finding that relocation was reasonable where the record contained evidence that "there are 1.2 billion people, including 19 million Sikhs [like the petitioner in that case], living in India and that Indian citizens—Sikhs in particular—do not face difficulties relocating within the country"; country conditions evidence did not report the type of abuse the petitioner feared; and the petitioner, who had been a farmer, was also able to work in construction).

While we acknowledge that some factors may support a finding that Sahni can reasonably relocate, the agency—not this Court—should weigh them in the

first instance. And the agency should weigh them while properly assigning the burden of proof to DHS. Because the BIA's decision was "premised on legal error," remand is appropriate. *Abu Hasirah v. Dep't of Homeland Sec.*, 478 F.3d 474, 478 (2d Cir. 2007) (per curiam); *see also Gurung v. Barr*, 929 F.3d 56, 62 (2d Cir. 2019) (When the agency "has committed legal error . . . we will affirm *only* when remanding the case to the agency would be futile.").

Because the agency found that Sahni's ability to relocate prevented him from establishing the requisite likelihood of torture for CAT relief, we also remand for further proceedings as to his CAT claim.

For the foregoing reasons, the petition for review is DENIED IN PART, and GRANTED IN PART and REMANDED for further proceedings consistent with this order. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

10