Wang v. Garland

BIA
Ling, IJ
A208 093 311

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of January, two thousand twenty-five.

PRESENT:
>JON O. NEWMAN,
>JOSEPH F. BIANCO,
>EUNICE C. LEE,
>>*Circuit Judges.*

_____

ZHENHUA WANG,
>*Petitioner,*

v.                                                        **22-6586**
                                                         **NAC**

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
>*Respondent.*

_____

FOR PETITIONER:                    Gary J. Yerman, Esq., New York, NY.

**FOR RESPONDENT:**    Brian M. Boynton, Principal Deputy Assistant Attorney General; Julia J. Tyler, Senior Litigation Counsel; Jennifer A. Singer, Trial Attorney, Civil Division, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Petitioner Zhenhua Wang, a native and citizen of the People's Republic of China, seeks review of a December 7, 2022 decision of the BIA affirming a July 1, 2019 decision of an Immigration Judge ("IJ") which denied his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Zhenhua Wang*, No. A 208 093 311 (B.I.A. Dec. 7, 2022), *aff'g* No. A 208 093 311 (Immigr. Ct. N.Y.C. July 1, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed both the IJ's and the BIA's decisions. *See Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). We review factual findings for substantial evidence, and we review questions of law and the application of law to fact de novo. *See Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). "[T]he administrative findings of fact are conclusive unless any reasonable

2

adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Because Wang did not allege past persecution, he had the burden to demonstrate a well-founded fear of future persecution. 8 C.F.R. § 1208.13(a), (b)(2). To make that showing, an applicant must "present credibly testimony that he subjectively fears persecution and establish that his fear is objectively reasonable." *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004). "Objective reasonableness entails a showing that a reasonable person in the petitioner's circumstances would fear persecution if returned to his native country." *Jian Xing Huang v. U.S. INS*, 421 F.3d 125, 128 (2d Cir. 2005). A "[non-citizen's] fear may be well-founded even if there is only a slight, though discernible, chance of persecution." *Diallo v. INS*, 232 F.3d 279, 284 (2d Cir. 2000).

An applicant can establish a well-founded fear either by showing (1) a reasonable possibility that he would be "singled out individually for persecution" if returned or (2) a "pattern or practice" of persecution of a group of "persons similarly situated" to the applicant. 8 C.F.R. § 1208.13(b)(2)(iii); *see also Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013). Where, as here, a claim is based on activities undertaken after the applicant's arrival in the United States, establishing

3

a well-founded fear also requires "some showing that authorities in [the applicant's] country of nationality are either aware of his activities or likely to become aware of his activities." *Hongsheng Leng v. Mukasey*, 528 F.3d 135, 143 (2d Cir. 2008).

Wang, who began practicing Christianity in the United States, conceded that Chinese authorities do not know that he is a Christian, and he does not argue that the Chinese authorities will learn of the religious activities he undertook in the United States. Rather, his specific claim is that because he will attend an underground church and proselytize in public in China, there is a reasonable possibility that the Chinese government will learn of these activities and persecute him as a result; moreover, he argues that he established this possibility by testifying that he will practice his religion in public and presenting evidence of a pattern or practice of surveillance and persecution of similarly situated Christians. [1] We remand because the agency erred in several respects in concluding that Wang failed to satisfy his burden to show an objectively

---

[1] To the extent Wang relies on evidence not in the agency record to support his pattern-or-practice claim, we do not consider that evidence. *See* 8 U.S.C. § 1252(b)(4)(A) (limiting judicial review to "the administrative record on which the order of removal is based").

reasonable fear of future persecution.

First, the agency appears to have applied an incorrect standard by requiring Wang to demonstrate that the government would "likely" learn of his religious activities, rather than demonstrating that there is a "reasonable possibility" of that event. *See Hongsheng Leng*, 528 F.3d at 143 (explaining that while an applicant must make "some showing" that the government is aware or is "likely to become aware" of the petitioner's activities, the burdens for asylum and withholding of removal are different, and the burden of proof for asylum is "only a reasonable possibility" (quotation marks omitted)).

Second, the agency failed to engage with the strongest evidence in the record that suggests that there is a reasonable possibility that the government will learn of Wang's religious activities: his credible testimony that his religious practice includes proselytizing to strangers in public—a practice that Wang intends to continue in China despite knowing that some people he speaks to will receive this information poorly and believe that he is advocating an illegal "cult religion."[2]

---

[2] The record also reflects that Wang is from a city, i.e., a place where he is likely to regularly encounter strangers and public authorities.

When summarizing the claim, the IJ acknowledged Wang's testimony about proselytizing, but the IJ *did not* mention it in her discussion of whether there was evidence that the government was likely to become aware of Wang's religion. Admittedly, we do not require the agency "to expressly parse or refute on the record each individual argument or piece of evidence," *Ojo v. Garland*, 25 F.4th 152, 171 (2d Cir. 2022) (quotation marks omitted), and "we presume that [the agency] has considered all of the evidence before [it], unless the record compellingly suggests otherwise," *Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2009). Here, after discussing Wang's supportive letters and testimony that the Chinese government is not looking for him and is not aware of him, the IJ stated that there was no other evidence that authorities were likely to learn of Wang's religious practice, which suggests that the IJ failed to expressly consider Wang's testimony about proselytizing to strangers in this particular context.[3] Given that the IJ overlooked material evidence, this was error. *See Cao He Lin v. U.S. Dep't of Just.*, 428 F.3d 391, 400 (2d Cir. 2005) (the agency "must consider all

[3] We note that this section of the IJ's decision is unclear because several words were transcribed as "unintelligible," and the IJ cited Exhibit 6A, but the transcript reflects that "Group Exhibit 6" consists of "Tabs E through H." Certified Administrative Record at 79.

the evidence in the record that has probative value"); *see also Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009) (remanding where agency overlooked material evidence, while acknowledging that the agency does not err "every time an item of evidence is not explicitly considered or is described with imperfect accuracy").

Rather than cure the error, the BIA merely acknowledged Wang's argument that the Chinese government would discover his faith and persecute him because of his public proselytizing, and stated that it affirmed the IJ's determination that he did not meet his burden to show that the government would become aware of his activities. The BIA emphasized that Wang did not present sufficient "objective" evidence that officials would discover his religious activities, but it did not explain why more was required to show a *reasonable possibility* that his illegal religious activity, conducted in public, would come to public officials' attention. While it is possible that the agency will reach the same conclusion on remand, it should address this evidence in its consideration of objective reasonableness. *See Ojo*, 25 F.4th at 170 ("If the agency overlooks material evidence supporting a petitioner's claim or fails to provide sufficient reasoning for the reviewing court to understand the basis for rejecting such evidence, a petitioner is entitled to a remand without showing that such evidence would compel a decision in

7

petitioner's favor.").

Notwithstanding these errors, we could affirm if the agency had made an error-free finding that there was no reasonable possibility that a person Chinese authorities knew to be proselytizing would be persecuted, or it were obvious from the record that it would make such a finding on remand. *See Gurung v. Barr*, 929 F.3d 56, 62 (2d Cir. 2019) (explaining that, when the agency's evaluation of the record contains errors, "we will affirm *only* when remanding the case to the agency would be futile," such as "when the IJ articulates an alternative and sufficient basis for her determination" or "when overwhelming evidence in the record makes it clear that the same decision is inevitable on remand" (quotation marks omitted)). That is not the case here.

The agency's discussion of whether there was a pattern or practice of persecution of Christians in Fujian Province did not address the treatment of Christians who publicly proselytize; the agency only discussed Christians generally and those who practice in unregistered churches. Moreover, the IJ and BIA emphasized that a U.S. State Department Report mentioned only one incident of religious persecution in Fujian, involving a Catholic bishop, and determined that the incident did not support the conclusion that Wang was at risk of

8

persecution because Wang is neither Catholic nor a church leader.   But the report also describes an inspection and attempt to shut down a kindergarten operated by an unregistered house church (i.e., the type of church Wang credibly testified he would join) in Fujian Province.   While the agency might conclude that the U.S. State Department Report still does not show a pattern or practice of Christians, remand is appropriate because this finding appears to have been important to its reasoning:  both decisions mentioned it, and the agency generally gives considerable weight to State Department reports.   *See Doe v. Sessions*, 886 F.3d 203, 211 (2d Cir. 2018) (remanding where agency "overlooked key evidence and mischaracterized the record"); *Xiao Ji Chen*, 471 F.3d at 341 (noting that "a report from the State Department is usually the best available source of information on country conditions" (quotation marks omitted)).

Nor is it "clear" from the record that it is "inevitable" that the agency will find that there is no pattern or practice of persecution of Christians who publicly proselytize.  *Gurung*, 929 F.3d at 62.   The Government notes that evidence about persecution of Christian proselytizers is sparse, and argues that this means that Wang failed to establish systemic or pervasive persecution of this group.  *See In re A-M-*, 23 I. & N. Dec. 737, 741 (B.I.A. 2005) (defining a pattern or practice of

9

persecution as the "systemic or pervasive" persecution of a group). The Government is correct that the record only mentions one such incident. But the Government also concedes that "the country conditions evidence indicates that public proselytizing in China is not permitted and that offenders may be subject to administrative and criminal penalties." Respondent Brief at 12. The agency might conclude that Chinese Christians rarely engage in the kind of proselytization that is part of Wang's religious practice because of the certainty of government sanctions.

In sum, the errors set forth here warrant remand for consideration of the full record under the appropriate legal standard. *See Ojo*, 25 F.4th at 170; *Gurung*, 929 F.3d at 62.

For the foregoing reasons, the petition for review is GRANTED and the case is REMANDED for further proceedings consistent with this order. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

10